| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Tower Loan of Missouri, LLC DBA<br>Tower Loan of Imperial | **DEFENDANTS**<br>Pamela Morris |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>McPhail Sanchez, LLC<br>P O Box 870<br>Mobile, AL 36601<br>(251) 438-2333 | **ATTORNEYS** (If Known)<br>Andrew Kirkwood Smith |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Action under 11 U.S.C. § 523(a)(2)(A) to except debt from discharge. Plaintiff seeks to recover funds and find debt non-dischargeable based on the Debtor obtaining loan proceeds through an installment loan agreement executed two days prior to the bankruptcy filing with no intent or ability to repay, constituting fraud/misrepresentation

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ 2,113.88 |
| Other Relief Sought | |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Pamela Annette Morris | BANKRUPTCY CASE NO.<br>26-43230-BCW | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Missouri | DIVISION OFFICE<br>Eastern | NAME OF JUDGE<br>Brian C. Walsh |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Tiffany B. Smith, Attorney for Plaintiff | | |
| DATE<br>10/22/2026 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Tiffany B. Smith | |

**INSTRUCTIONS**

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet. When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | | |
| **PAMELA ANNETTE MORRIS** | * | **CASE NO. 26-43230-BCW** |
| | * | |
| | * | **CHAPTER 13** |
| **Debtor.** | * | |

---

| | | |
|---|---|---|
| **TOWER LOAN OF MISSOURI, LLC** | | |
| **DBA TOWER LOAN OF IMPERIAL** | * | |
| | * | |
| **Plaintiff,** | * | |
| **vs.** | * | **ADV NO.** |
| | * | |
| **PAMELA MORRIS** | * | |
| | * | |
| **Defendant.** | * | |

**<u>COMPLAINT TO DETERMINE DISCHARGEABILITY OF INDEBTEDNESS PURSUANT 11 U.S.C. §523</u>**

**COMES NOW**, Plaintiff, Tower Loan of Missouri, LLC DBA Tower Loan of Imperial, by and through its attorney of record, Tiffany B. Smith, to allege and complain as follows:

## I. PARTIES AND JURISDICTION

1. Plaintiff is a business entity qualified to do business in Missouri.

2. Defendant filed a voluntary Chapter 13 Bankruptcy Petition on July 25, 2026 ("Petition") giving rise to Bankruptcy Case 26-43230.

3. This Court has Jurisdiction over the subject matter of this complaint as a core proceeding pursuant to the provisions of 28 U.S.C. §157, 28 U.S.C. §1334, and 11 U.S.C. §523; this is a proceeding to determine the dischargeability of a particular debt and to determine whether or not grounds exist for the denial of a complete discharge of the Debtor.

4. Plaintiff is a creditor in this bankruptcy proceeding.

## II. COUNT ONE

5. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-4, above.

6. On or about July 23, 2026, Defendant entered into an Installment Loan Agreement and Disclosure Statement in the amount of $2,447.90 ("Loan") and incurred a debt with Plaintiff as evidenced by documents marked Exhibit "A" and made part hereof by reference.

7. The Defendant's debt is a "consumer debt", as defined by 11 U.S.C. §101(8).

8. The Petition indicates that the Defendant made a payment of $600.00 to her attorney, for representation in the Bankruptcy Case, on July 25, 2026 – two (2) days after initiating the Loan with the Plaintiff. [Doc. No. 1, Pg. 34]

9. Debtor completed the Certificate of Creditor Counseling on July 24, 2026, one (1) day after obtaining the Loan from the Plaintiff. [Doc. No. 3]

10. On July 23, 2026, exactly two (2) days prior to filing the underlying Chapter 13 bankruptcy petition, the Debtor applied for and obtained an unsecured signature loan from Plaintiff, receiving cash in the amount of $2,006.20. At the time Debtor accepted these cash proceeds, she lacked both the financial ability and the objective intent to repay the obligation, as evidenced by the fact that she completed her mandatory pre-filing credit counseling just one (1) day later on July 24 and subsequently filed for Chapter 13 bankruptcy relief on July 25, 2026. Because the Debtor incurred this substantial cash obligation on the eve of filing with imminent plans to seek bankruptcy protection, the debt was obtained through false pretenses, false representations, or actual fraud, and is therefore non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A),

11. The agreement between the Defendant and Plaintiff calls for monthly payments. The Defendant failed to remit any payment.

12. By obtaining and/or accepting an extension of credit from Plaintiff and incurring

charges on the account, the Defendant represented an intention to repay the amount financed.

13. Plaintiff reasonably relied on the representations made by the Defendant.

14. As a result of the Defendant's conduct, Plaintiff has suffered damages in the amount of $2,113.88.

15. The Defendant is not entitled to a discharge of the $2,113.88 debt owed to the Plaintiff, which represents the payoff amount as of the petition date.

WHEREFORE, Plaintiff prays that this Court grant the following relief:

A. For the entry of a judgment against the Defendant, in the amount of $2,113.88, plus interest, attorney fees, and costs of court;

B. For an Order pursuant to 11 U.S.C. §523(c)(1) determining the Defendant's indebtedness to Plaintiff in the amount of $2,113.88, plus interest, attorney fees, and cost of court, to be excepted from discharge pursuant to 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(2)(C)(i)(I).

C. For such other, further, and different relief to which Plaintiff may be entitled, the premises considered.

Respectfully submitted October 22, 2026.

/s/ Tiffany B. Smith
Tiffany B. Smith
MO Bar No: 78360
McPhail Sanchez, LLC
Attorney for Plaintiff
126 Government St
Mobile AL 36602
Phone (251) 438-2333
Fax (251) 438-2367
TiffanyS@mslawyers.law

## CERTIFICATE OF SERVICE

I, Kent D. McPhail, do hereby certify that I have this 22nd day of October 2026 served a copy of the above and foregoing Complaint to Determine Dischargeability of Indebtedness and Exhibit A to the parties listed below by the service method indicated:

U.S. MAIL, FIRST CLASS POSTAGE PREPAID
Pamela Annette Morris
9976 Meadow Avenue
Saint Louis, MO 63125
Debtor/Defendant

ECF FILING NOTIFICATION
Andrew Kirkwood Smith
ATTORNEY FOR DEBTOR
230 South Bemiston Avenue, Suite 1210
Clayton, MO 63105
aksmithlaw@gmail.com

ECF FILING NOTIFICATION
Diana S. Daugherty
CHAPTER 13 TRUSTEE
P. O. Box 430908
St. Louis, MO 63143
standing_trustee@ch13stl.com

ECF FILING NOTIFICATION
U.S. TRUSTEE
Office of US Trustee
111 S Tenth St, Ste 6.353
St. Louis, MO 63102
USTPRegion13.SL.ECF@USDOJ.gov

/s/ Tiffany B. Smith
Tiffany B. Smith

TOWER LOAN OF MISSOURI, LLC

Exhibit "A"

[redacted]

Payee(s): PAMELA MORRIS

Check Number: [redacted]

Check Date: 7/23/2026

Check Amount: **$2,006.20*

Branch Name: TOWER LOAN OF IMPERIAL 1257 MAIN ST

Branch Number: 020541 Loan Number: [redacted]

TOWER LOAN OF MISSOURI, LLC

[redacted]

Payee(s): PAMELA MORRIS

Check Number: [redacted]

Check Date: 7/23/2026

Check Amount: **$2,006.20*

Branch Name: TOWER LOAN OF IMPERIAL 1257 MAIN ST

Branch Number: 020541 Loan Number: [redacted]

TOWER LOAN

BMO HARRIS BANK N.A.
CHICAGO, ILLINOIS

Void if not cashed in 90 days

MOTL

2-28/710

[redacted]

TOWER LOAN OF IMPERIAL 1257 MAIN ST
IMPERIAL,MO 63052

[redacted]

PAY TO THE ORDER OF
PAMELA MORRIS

DATE
7/23/2026

Amount
**$2,006.20*

PAY EXACTLY
*Two Thousand Six Dollars and Twenty Cents*

Proceeds For Loan [redacted] MORRIS, PAMELA [redacted]

[redacted]

AUTHORIZED SIGNATURE

[redacted]

[redacted]



# MO. INSTALLMENT LOAN AGREEMENT AND DISCLOSURE STATEMENT

| LOAN NUMBER | BORROWER NAME | ADDRESS |
|---|---|---|
| [redacted] | PAMELA MORRIS | [redacted] |
| | CO-BORROWER NAME | ADDRESS |
| DATE OF LOAN: 7/23/2026 | CO-BORROWER NAME | ADDRESS |

Lender TOWER LOAN OF MISSOURI, LLC DBA TOWER LOAN OF IMPERIAL
1257 MAIN ST, IMPERIAL, MO, 63052

**FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Schedule of Consecutive Monthly Payments | |
|---|---|---|---|---|---|
| | | | | Number of payments | Amount of each payment |
| 58.15% | $ 2352.10 | $ 2447.90 | $4800.00 | 30 | 160.00 |
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | 1ST Payment Due: 9/6/2026 | Last Payment Due: 2/6/2029 |

**SECURITY:** You are giving a security interest in: Signature

Collateral securing this and other loans you have with us also secures other and future indebtedness.

**LATE CHARGE:** If a payment is more than 15 days late, you will be charged the greater of $15.00 or 5% of the payment, not to exceed $50.00 (or more than $5.00 if the delinquent payment is $25.00 or less).

**FILING FEES:** $ 0.00

**PREPAYMENT:** If you pay off early, you will not have to pay a penalty, and you may be entitled to a refund of part of the finance charge.

See your Promissory Note and Security Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**ITEMIZATION OF AMOUNT FINANCED UNDER FEDERAL LAW OF** $ 2447.90

| | |
|---|---|
| Amount given to you directly | $ 2006.20 |
| Amount paid on your account | $ 0.00 |
| **Amounts paid to others on your behalf (we may be retaining a portion of this amount):** | |
| Public officials | $ 0.00 |
| Insurance company Credit Life | $ 67.10 |
| Credit Disability | $ 216.00 |
| Credit Property | $ 0.00 |
| Unemp Ins | $ 158.60 |
| NAME | $ 0.00 |
| NAME | $ 0.00 |
| NAME | $ 0.00 |
| NAME | $ 0.00 |
| NAME | $ 0.00 |
| NAME | $ 0.00 |
| NAME | |
| Fee Authorized By law (408.140) | $ 100.00 |
| Subtotal of above amounts | $ 2,547.90 |
| LESS Prepaid Finance Charge | $ 100.00 |
| Amount Financed (TOTAL) | $ 2447.90 |

**INSURANCE:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the annual cost.

| TYPE | DEC. C.L. | LVL. C.L. | PREMIUM | SIGNATURES | | | |
|---|---|---|---|---|---|---|---|
| Single Credit Life | X | | $ 67.10 | I/We want credit life insurance: | X [signature] | X: | X: |
| Joint Credit Life | | | $ 0.00 | I/We want credit life insurance: | X: | X: | X: |
| Credit Disability | X | | $ 216.00 | I want credit disability insurance: | X [signature] | X: | X: |

**I understand that I am free to insure my property with whatever licensed company, agent or broker I may choose; that I may do so at any time after the date of this loan; that I have not cancelled existing insurance on my property if I owned it before this loan; and that this loan cannot be denied simply because I did not purchase my insurance through the lender.**

**Signed: X** [signature] **X:** ______ **Date:** 7/23/2026

☐ **Dual Interest**

☐ **Single Interest**

**If you get personal property insurance from or through the creditor, you will pay $ 0.00**

## DISCLOSURES REQUIRED BY MISSOURI LAW:

Including the origination fee of $ 100.00 the principal amount of the loan is $ 2,547.90 and the state contract rate is 55.07 %

## PROMISSORY NOTE AND SECURITY AGREEMENT

### ALL INFORMATION IN THE ABOVE DISCLOSURE STATEMENT IS INCLUDED HEREIN BY REFERENCE

**PARTIES:** "Borrower" means all Borrowers signing below whether one or more; and "Lender" means the Lender named above.

**NOTE:** For value received, Borrower, jointly and severally, promises to pay to the order of Lender the "Total of Payments" (see above), in the monthly payments stated in the "Schedule of Payments" (see above) until paid in full. Any extension, renewal, renewals, or other indulgences by Lender shall not release Borrower. Borrower waives protest.

**LATE CHARGE:** Borrower shall pay Lender a late charge, the greater of $15.00 or 5% of the payment on any payment that continues unpaid for more than fifteen (15) days following its due date, but Borrower shall not pay more than $50.00 on any one scheduled payment or more than $5.00 if the scheduled payment is for $25.00 or less.

**PREPAYMENT REFUND:** If Borrower pays the entire loan balance (i.e. Total of Payments), with interest and accrued charges and fees, if any, in full (by cash, renewal or refinancing) one month or more before the final installment due date, Lender shall pay Borrower a refund of unearned finance charges, excluding any origination fee, as follows: (i) if the term of the note is sixty-one (61) months or less and the Principal amount of loan is $5,000.00 or less, the refund shall be computed according to the rule of 78s, or (ii) if the loan term is more than sixty-one (61) months or the Principal amount of loan is more than $5,000.00, the refund shall be computed according to the actuarial method. If this loan is secured by Borrower's principal dwelling or Borrower's residential real estate and Borrower prepays this loan in full one month or more before the final installment due date, Lender shall refund the unearned finance charges computed by the actuarial method. The origination fee (if any) is fully earned, and is not subject to rebate upon prepayment or acceleration of this note.

**SECURITY INTEREST:** To secure payment of this loan, Borrower grants Lender a security interest in the property described below under "Security".

**BORROWER'S DUTIES:** If Lender request, Borrower shall maintain fire, theft, and extended coverage insurance on the security. Such insurance policies shall be payable to Lender and Borrower as Borrower's interest shall appear and shall provide Lender with at least ten (10) days written notice before cancellation. In addition, Borrower shall keep the security at Borrower's address shown above, in good repair and free from adverse liens and security agreements.

**DEFAULT:** Borrower defaults when: (i) Borrower does not pay any payment in full when due; (ii) Borrower does not fully perform any of Borrower's duties under this agreement; (iii) Borrower moves the security without first giving Lender written notice; (iv) Borrower abandons the security; (v) any of security is lost, stolen, not maintained, destroyed, or substantially damaged; (vi) Borrower death or incompetency; (vii) Borrower defaults under another Tower Loan agreement; or (viii) Lender reasonably deems itself insecure. A default by the Borrower is enforceable only to the extent that: (1) The Borrower fails to make a payment as required by the Agreement; or (2) the Lender's prospect of payment, performance, or ability to realize upon the collateral is significantly impaired.

**REMEDIES:** If Borrower defaults, Lender can take one or more of the following actions: (i) cancel any credit insurance and apply unearned premiums to the account, (ii) bring suit for or arbitrate the delinquent payments; (iii) accelerate and declare due and if required by applicable law, after notice and opportunity to cure, the remaining balance (but in such event, upon receiving full payment, Lender shall rebate the unearned finance charge on the date of payment by using the method described in Prepayment Refund (above); (iv) repossess and dispose of any security as a secured party under the Missouri Uniform Commercial Code; and/or (v) foreclose on any securing deed of trust on realty. Ten (10) days notice by regular mail to Borrower at the above address shall be reasonable notice to Borrower of any disposition of any security. Lender may hire or pay an attorney to help collect the Note or recover its collateral if Debtor does not pay or if Debtor files bankruptcy. Debtor will reimburse Lender for these costs. This includes, subject to limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to lift, modify, or vacate any automatic stay or injunction), for defending against unsuccessful counterclaims, and appeals.

**OTHER INDEBTEDNESS:** The security agreement secures all and future indebtedness Borrower owes to Lender. Collateral securing other loans Borrower has with Lender also secures this loan.

**GOVERNING LAW:** The construction, validity and enforcement of this loan agreement shall be governed by the laws of the State of Missouri, without regard to the principles of conflicts of laws.

**SECURITY:** The security to which the security interest granted hereunder attaches is indicated below and is more particularly described as follows:

**VALUE:** We represent to you the value of any personal property security below is ........................ $ 0.00

This value excludes the value of any motor vehicles, livestock, boats or mobile homes

mmjohnston
7/23/2026
New Loan Document Checked Data

[redacted]



# ADDITIONAL DISCLOSURES

**CREDIT REPORTING:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You agree and hereby authorize us to obtain credit reports on you, both now, and at any time any portion of the debt remains owed to us. You specifically acknowledge and agree that we may disclose any default by you under this Note, along with any other relevant information, to credit reporting bureaus.

**SEVERABILITY:** The illegality or unenforceability of any provision of this Promissory Note and Security Agreement or any instrument or agreement entered into in connection herewith including, without limitation, the Arbitration Agreement, shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Promissory Note and Security Agreement, the Arbitration Agreement or any other instrument or agreement entered into in connection herewith.

**CONSENT TO RECEIVE COMMUNICATIONS:** You expressly consent and agree that we and any of our agents, third-party services, service providers or assignees (hereinafter "Lender") may call you, using an automatic telephone dialing system or otherwise, leave you a voice, prerecorded, automated or artificial voice message, email or send you a mobile message, which includes, but is not limited to, text messages, Rich Communication Services (RCS) , SMS, MMS for any purpose. "Any purpose" includes, but is not limited to, 1) related to the servicing or collection of any loan that you have with us, 2) for information purposes related to your loan(s) or 3) for solicitation, advertising or purchasing of any property, goods or services (each a "Communication"). You agree that for any Communication Lender may call or send you a mobile message at any telephone number provided to Lender by you or anyone associated with you or acting on your behalf including, but not limited to, phone numbers and cell phone numbers associated with your loan provided to Lender now or in the future. Further Lender may send an e-mail to any email address that you provide to us now or in the future. You agree and acknowledge that these Communications aren't unsolicited for purposes of any state or federal law and that your service provider may charge you for such Communications. Additionally, you agree that Lender may always communicate with you in any manner permissible by law, including for purposes of debt collection. You understand that your consent to receive advertisement or telemarketing emails, texts, mobile messages, and calls is voluntary, revocable by you, and is not required as a condition of your obtaining this loan. If you do not want to receive any messages about your loan sent using an automatic telephone dialing system, you can withdraw consent by following the opt-out procedures in the message.

**CONVENIENCE FEE:** You agree and authorize that if you make a loan payment through the use of a telephone or electronically through the internet, and where allowed by law, a fee will be charged by a third party vendor, which may vary depending upon the amount of the payment made and will be in addition to the payment made at the time of payment.

**ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the parties. No amendment, modification or waiver of any provision shall be valid unless in writing and signed by both parties.

**RETURNED PAYMENT FEE:** You agree and authorize that if you make a payment to Tower Loan or its affiliates, by check, draft, or electronic means which is not honored due to insufficient or uncollected funds, closed or nonexistent account or any other reason payment is denied by your financial institution, lender may assess a returned payment fee and may also assess any actual costs incurred with said transaction as allowed by state law. This fee for loans originated will be as follows: Alabama $30.00, Illinois $25.00, Louisiana $25.00, Mississippi $15.00, Missouri $25.00 plus any actual expenses incurred.

# ARBITRATION AGREEMENT

**Read Carefully.** This agreement limits your rights to use the court to address claims and disputes.
"Borrower" means all Borrowers signing the reverse side hereof. "Lender" means the Lender named on the reverse side hereof.

Arbitration is a method of resolving disputes between parties without going to court. Borrower and Lender agree that if there are any disputes between them, those disputes will be resolved by arbitration. Any party may require the dispute or claim to be submitted to an arbitrator in accordance with this provision. The arbitrator's decision will be final and binding on all parties. The parties agree that the funds loaned to Borrower were transactions in interstate commerce, that this loan involves interstate commerce, and that the Federal Arbitration Act applies to this transaction. Borrower and Lender understand that under this arbitration agreement, they lose their right to a jury trial, their pretrial discovery is more limited, the dispute shall be heard and decided by someone who may not be a judge, the arbitrator is not required to state the reasons for his decision, and the right of appeal is very limited.

Borrower and Lender agree that they shall arbitrate all disputes between them on the following terms:

(1) This arbitration agreement applies to all claims and disputes between Borrower and Lender. The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement, or the to the arbitrability of any claim or counterclaim. This includes, but is not limited to, **all** claims and disputes arising out of, in connection with, or relating to:
- The loan Borrower is obtaining from Lender today and any other loans or retail installment contracts with Lender;
- Any insurance purchased in connection with this loan or any previous loan or retail installment sales contract;
- Any auto club membership or other product or service purchased in connection with this loan;
- Whether the claim or dispute must be arbitrated;
- The validity of this arbitration agreement;
- Any negotiations or discussions between us;
- All claims or disputes based upon Federal or State laws or regulations;
- Class action types of claims and consolidated claims,
- Claims or disputes involving or alleging breach of contract, fraud or misrepresentation (including fraud in the inducement), breach of fiduciary duty, breach of duty of good faith and/or fair dealing, negligence, torts, bad faith, and demands for punitive damages or attorneys fees.

(2) This arbitration provision or agreement also applies to all disputes and claims between Borrower and Lender, Lender's agents, employees, affiliated companies and the employees or agents of these affiliated companies. Some of our affiliated companies include American Federated Insurance Company, American Federated Life Insurance Company, First Tower Loan LLC, Tower Loan of Mississippi LLC, Gulfco of Mississippi LLC, Gulfco of Alabama LLC, Gulfco of Louisiana LLC, Tower Loan of Missouri LLC, Tower Loan of Illinois LLC and First Tower LLC. The foregoing are separate companies but affiliated.

(3) Arbitration shall be started by either party giving written notice to the other of his, her, or its demand for arbitration, which shall briefly state the nature of the dispute, the amount involved, and the relief sought. The other party shall have thirty (30) days from receipt of the notice to deliver an answering statement to the party requesting arbitration. No filing fee or other charge is necessary to start the arbitration.

(4) The dispute shall be heard by a single arbitrator. The arbitrator shall be selected by mutual agreement of the parties. If a party fails to deliver a timely answering statement, then the party requesting arbitration shall select a neutral, disinterested arbitrator who shall decide the matter. If an answering statement is filed and the parties cannot agree upon the arbitrator, then the provisions of the Federal Arbitration Act (9 U.S.C §5), shall apply. Lender shall pay the arbitrator's fees and expenses for the first two days of hearings. In his decision or award, the arbitrator shall direct the parties to pay his or her fees and other costs according to the relative fault of the parties.

(5) The arbitration shall be held in Laclede County, Missouri, unless the Borrower requests in the demand for arbitration or the answering statement, the arbitration be held in his, her, or its county of residence or principal place of business.

(6) Except as they conflict with this arbitration provision and with the Federal Arbitration Act, all arbitrations under this provision shall follow the procedures set forth in the Federal Arbitration Act, which are incorporated by reference.

(7) This arbitration provision or agreement applies even if Borrower's loan(s) have been paid in full, have been charged off or discharged in bankruptcy. This agreement is also binding upon the successors, assigns and representatives of the parties.

(8) Neither party shall be required to arbitrate claims or matters wherein the total amount at issue or in dispute (inclusive of attorneys fee, costs or any punitive damages) is less than $10,000. Lender is not required to initiate arbitration proceedings before repossessing collateral, instituting executory process, or foreclosing upon real property. However, disputes arising out of or relating to ordinary process or lender seeking a money judgment or pursuing seizure, sale, and other foreclosure remedies, executory process or repossession of collateral shall be arbitrated.

(9) Subject to paragraph (8), If either party files a lawsuit involving a dispute covered by this agreement, the other party can have the suit stayed and the plaintiff shall be required to arbitrate under this provision. If either party files a lawsuit for any of the matters not covered by this provision (as stated in item 8 above) and the other party files a counterclaim, then within thirty (30) days of the counterclaim, either party may demand arbitration. In such event all disputes, causes of action, and claims in both the complaint and the counterclaim shall be heard and decided by the arbitrator according to